**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARGARET SMITH HENDERSON,**

        **Plaintiff,**

**v.**                               **Case No:  6:11-cv-1559-Orl-GJK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OF DECISION

Margaret Smith Henderson (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her application for social security disability benefits (hereafter "Application"), which alleged a disability onset date of August 27, 2006.  Doc. No. 1.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

**I.**    **MEDICAL AND OPINION EVIDENCE**

    **A.  John A. Ortolani, M.D.**

On March 20, 2000, John A. Ortolani, M.D., began treating Claimant after she tripped at work and hit her neck against a wall.  R. 380.  Claimant reported having daily headaches and neck pain that radiated into both shoulders and arms.  R. 380.  Dr. Ortolani noted that Claimant exhibited restriction in retraction and extension of her cervical spine with paracervical muscle tenderness and spasms, and decreased sensation to pinprick in a C5-6 distributional pattern in her left arm.  R. 380.  Dr. Ortolani's "impression" was that Claimant was suffering from posttraumatic headaches and cervical strain syndrome with some radicular symptoms in her left

arm.  R. 381.  Dr. Ortolani indicated that Claimant should do reasonably well with conservative management and pain medication.  R. 381.  On April 18, 2000, Dr. Ortolani noted that Claimant was doing better, but was still having problems with her neck and head.  R. 379.  On May 8, 2000, Dr. Ortolani noted that Claimant was doing a little better, had better range of motion and released Claimant to perform light duty work, but not lift more than ten pounds.  R. 378.  Dr. Ortolani reviewed Claimant's cervical spine MRI and found disc bulges at C5-6 and C6-7, but no evidence of a frankly herniated disc.  R. 388.[1]  Dr. Ortolani also observed evidence of muscle spasm with straightening of the cervical spine.  R. 388.  On May 22, 2000, Dr. Ortolani indicated that Claimant was doing worse, stopped physical therapy because it was aggravating her neck and back, and noted that Claimant was having radicular pain radiating down both arms which was worse on her right side.  R. 377.  Dr. Ortolani ordered Claimant not to work.  R. 377.  Dr. Ortolani also ordered an EMG and nerve conduction study, the results of which were normal.  R. 377, 387.[2]

From June 19, 2000, to April 30, 2001, Dr. Ortolani noted that Claimant was "doing reasonably well" and released her to continue working as a licensed practical nurse (hereafter "LPN") with light duty restrictions, not to lift more than ten to fifteen pounds or push more than twenty-five pounds.  R. 373-76.  From July 26, 2001, to November 6, 2001, Dr. Ortolani noted complaints of neck, back and leg pain, which were causing difficulty walking.  R. 369-72.  Dr. Ortolani unsuccessfully tried lateral glide, extension and rotational stretches to alleviate Claimant's pain, but noted that her medications provided some relief.  R. 369-72.

On September 19, 2005, Dr. Ortolani evaluated Claimant after she fell at work, twisted her back and reported low back pain radiating down her left leg.  R. 439.  Dr. Ortolani's review

---

[1] MRI stands for magnetic resonance imaging.

[2] EMG stands for electromyography.

of Claimant's lumbar spine MRI revealed a minimal disc bulge at L4-5, which Dr. Ortolani stated was unrelated to her prior accident or prior history of low back problems.  R. 439.  Dr. Ortolani observed significant paralumbar muscle tenderness and spasms, which was greater on Claimant's left side, as well as pain over the sciatic nerves.  R. 439.  Dr. Ortolani also observed decreased sensation to pinprick in Claimant's left thigh.  R. 439.  Dr. Ortolani provided an assessment of lumbosacral strain syndrome with possible lumbar radiculopathy and left leg numbness.  R. 442.  In making this assessment, Dr. Ortolani stated that Claimant's lumbar spine MRI "is for the most part normal and this is not too severe."  R. 441.  Dr. Ortolani opined that Claimant would benefit from physical therapy and could continue to perform light duty work that did not require lifting more than ten to fifteen pounds or frequent bending.  R. 441.

On December 28, 2006, Dr. Ortolani began treating Claimant after an automobile accident that occurred on December 21, 2006.  R. 366.  Claimant indicated that she injured her neck, back and knees in the accident, and was also experiencing headaches after striking her head on the door.  R. 366.  Dr. Ortolani noted that the accident exacerbated Claimant's prior back and knee problems.  R. 366.  Dr. Ortolani indicated that Claimant's prior complaints of neck pain improved or resolved over time.  R. 366.  Dr. Ortolani's examination revealed muscle tenderness, pain and spasms on Claimant's left side and left shoulder, paralumbar muscle tenderness and spasms with pain radiating down both legs, as well as pain and tenderness in both knees.  R. 366.  Dr. Ortolani assessed Claimant with posttraumatic headaches, cervical strain syndrome with left shoulder injury and lumbosacral strain syndrome with pain in both knees.  R. 368.  Dr. Ortolani ordered MRIs of the brain, cervical spine and left shoulder, Claimant to undergo physical therapy and prescribed medications.  R. 368.

On January 22, 2007, Dr. Ortolani wrote a letter stating that it was medically necessary for Claimant to remain off work as a result of the injuries from the automobile accident and her status would be reassessed on February 12, 2007.  R. 475. On February 12, 2007, Dr. Ortolani indicated that Claimant was doing a little better.  R. 365.  Dr. Ortolani reviewed Claimant's MRIs and noted that Claimant had a herniated disc in her neck, a tear at C3-4 and was experiencing a moderate amount of pain and difficulty.  R. 365.   On March 26, 2007, Dr. Ortolani released Claimant to perform light duty work, but expressed concern about the extent to which she could work given the herniated disc in her neck and problem with her knees.  R. 364. On April 5, 2007, Dr. Ortolani indicated Claimant was doing worse and administered a trigger point injection in the left shoulder after observing spasms in Claimant's left cervical region.  R. 363.   On May 1, 2007, Dr. Ortolani noted that Claimant was still experiencing a moderate amount of pain and discomfort, exhibited a lot of restriction of motion in her neck and spasms in the cervical region.  R. 362.  Dr. Ortolani reviewed an MRI of Claimant's cervical spine and observed a disc at C5-6 that appeared worse and new changes at C3-4.  R. 362.  Dr. Ortolani opined that Claimant had a five percent whole body impairment as a result of her automobile accident.  R. 362.  On October 1, 2007, Dr. Ortolani indicated that Claimant was doing a little worse after pinching the nerve in her neck again.  R. 358.  Dr. Ortolani gave Claimant a soft collar to wear and discussed not bending her neck or reaching with her left arm.  R. 358.  Dr. Ortolani increased Claimant's whole body impairment to eight percent after Claimant's EMG and nerve conduction study revealed nerve damage at C5-6.  R. 358.  On December 3, 2007, Dr. Ortolani noted Claimant was still having a moderate amount of pain and discomfort and continued Claimant on her medications.  R. 461.

On March 27, 2008, Dr. Ortolani noted Claimant was doing about the same, was still experiencing back pain and "there is not a lot we are able to do for this at this time." R. 463. On May 27, 2008, Dr. Ortolani indicated that Claimant was doing about the same and her medications were helping, but she was also experiencing a little shaking in her arm that could be related to the nerve damage. R. 465. Dr. Ortolani noted that he did not see anything else that needed to be done. R. 465. On July 21, 2008, Dr. Ortolani noted that Claimant was having a moderate amount of pain and discomfort in her neck at the site of her herniated disc and damaged nerve. R. 467. Dr. Ortolani changed Claimant's pain medication because it was bothering her stomach. R. 467.

### B. Denise Verones, Ph.D.

On January 29, 2008, Denise Verones, Ph.D., completed a psychological evaluation on behalf of the Commissioner. R. 401-04. Dr. Verones noted that Claimant drove herself to the evaluation, stated she had difficulty driving due to back pain and appeared to be a reliable informant. R. 401. Dr. Verones indicated that Claimant's chief medical complaints were herniated discs in her back and neck, pulmonary blood clots in her lungs, chronic back pain, rheumatoid arthritis and depression. R. 401. After conducting her evaluation, Dr. Verones diagnosed Claimant with adjustment disorder with depressed mood. R. 403. Dr. Verones opined that Claimant is capable of managing her finances. R. 403. Dr. Verones noted that Claimant has problems getting and staying asleep, and is very uncomfortable despite taking a muscle relaxer and Tylenol PM. R. 403. Dr. Verones reported that Claimant helps her niece get ready for school, performs some household chores, grocery shops, cooks, reads, watches television, typically does not socialize and attends church. R. 403-04.

Dr. Verones indicated that Claimant appeared somewhat depressed due to her reported pain and multiple medical problems.  R. 404.  Dr. Verones noted that Claimant did not provide any medical records to substantiate her reported problems.  R. 404.  Dr. Verones opined that Claimant's mild depression was not her main problem and that because her primary complaint was physical in nature Claimant's disability claim would "need to be made on the basis of physical findings from a physician."  R. 404.

### C.  David W. Carpenter, M.D.

On February 22, 2008, David W. Carpenter, M.D., conducted a physical examination on behalf of the Commissioner.  R. 420-22.  Dr. Carpenter indicated that Claimant's neck was supple without masses or adenopathy, her trachea was midline and freely moveable, and her carotid pulses were equal bilaterally with no evidence of bruits.  R. 421.  Dr. Carpenter observed that Claimant's back and spine showed no cervical, thoracic, lumbar or sacral spine point tenderness, paravertebral muscle spasms or point tenderness in the back musculature.  R. 421.  Dr. Carpenter noted that Claimant had full range of motion throughout her upper and lower extremities.  R. 421-22.  Dr. Carpenter indicated that there was no evidence of cyanosis, clubbing, edema, ulcerations, varicosities, motor or sensory deficits, joint deformities or joint inflammation in Claimant's upper and lower extremities.  R. 421-22.  Dr. Carpenter further indicated that there was no point tenderness in the shoulders, elbows, wrists, hands, hips, knees or ankles.  R. 421-22.  Dr. Carpenter further observed that Claimant had 5/5 grip strength, her fine manipulation skills were within normal limits, she ambulated normally without a limp, was steady without assistance and had good balance.  R. 421-22.

Dr. Carpenter's assessment of Claimant was chronic low back pain, chronic neck pain, rheumatoid arthritis with no evidence of joint inflammation, history of pulmonary embolism

treated with Coumadin and obesity.  R. 422.  Dr. Carpenter opined that Claimant has no motor or sensory deficits and her grip strength and fine manipulation skills were within normal limits.  R. 422.  Dr. Carpenter further opined that Claimant ambulates normally, is steady without assistance, has good balance and has no active joint inflammation.  R. 422.

### D.  Albert W. Gillespy, M.D.

On October 2, 2008, Albert W. Gillespy, M.D., performed a C5-6, C6-7 anterior cervical discectomy and anterior decompressions; a C5-6, C6-7 anterior interbody fusion; a left anterior iliac crest bone grafting; a C5-6, C6-7 C-Pod anterior cervical cage; and a C5-C7 quantum atomic anterior spinal instrumentation.  R. 590.  On October 17, 2008, Claimant reported that her neck and arm pain were gone, but was having some discomfort in her left pelvis.  R. 590.  Dr. Gillespy noted that Claimant's wounds were healing well and she had good strength in her arms and legs.  R. 590.

On October 28, 2008, Claimant reported that her neck pain, arm pain and arm weakness were gone.  R. 585.  Claimant reported that she had no discomfort in her left pelvis and she was "doing very well."  R. 585.  Dr. Gillespy noted that Claimant's wound was healing well, her deep tendon reflexes were 0-1/4 equal bilaterally in her biceps, brachial radialis and triceps.  R. 585.  Dr. Gillespy documented Claimant's motor strength as 5/5 equal bilaterally in the different myotomes of her upper extremities.  R. 575.

### E.  Basquat Friely

On August 12, 2009, Basquat Friely of Medical Specialists of Palm Coast completed a physical residual functional capacity questionnaire.  R. 597-601.[3]  Mr. Friely indicated that Claimant's first visit was February 2009, and she had been seen every month thereafter.  R. 597-98.  Mr. Friely diagnosed Claimant with chronic low back pain, chronic neck pain, anxiety,

---

[3]  The questionnaire does not indicate Mr. Friely's credentials in offering his opinion.

depression, rheumatoid arthritis, hypertension and pulmonary embolism.  R. 597.  Mr. Friely indicated that Claimant's low back pain and neck pain are progressive.  R. 597.  Mr. Friely listed Claimant's symptoms as low back pain, neck pain, fatigue, dizziness, nausea, vomiting and depressed mood.  R. 597.  Mr. Friely stated that Claimant experiences daily low back pain that is 10/10 in severity, sharp, radiates to legs and across the buttocks, and is made worse by moving or bending.  R. 597.  Mr. Friely stated that Claimant experiences daily neck pain that is 10/10 in severity, causes pressure, radiates to left arm causing weakness and left arm neuropathy.  R. 597.  Mr. Friely indicated that Claimant was prescribed Darvocet for the pain and it causes dizziness, nausea and vomiting.  R. 597.

Mr. Friely stated that Claimant's impairments can be expected to last at least twelve months.  R. 598.  Mr. Friely indicated that depression, anxiety and emotional factors affect Claimant's symptoms, functional limitations and physical condition.  R. 598.  Mr. Friely opined that Claimant's pain or other symptoms constantly interfere with the attention and concentration Claimant needs to perform even simple work tasks and that Claimant cannot perform even low stress jobs. R. 598.

Mr. Friely opined that Claimant can walk a half block before needing to rest or experiencing pain.  R. 598.  Mr. Friely indicated that Claimant can sit twenty minutes and stand ten minutes at one time before needing to change positions.  R. 598-99.  Mr. Friely stated that Claimant can sit, stand or walk less than two hours in an eight-hour workday.  R. 599.  Mr. Friely opined that Claimant would need to walk for ten minutes every ten minutes during an eight-hour workday.  R. 599.  Mr. Friely stated that Claimant would not need a job that requires shifting from sitting, standing or walking at will.  R. 599.  Mr. Friely indicated that Claimant would need to take an unscheduled thirty minute break every thirty minutes.  R. 599.  Mr. Friely stated that

Claimant must elevate her legs when sitting for a prolonged period of time, but does not need a cane or other assistive device when standing or walking.  R. 599.

Mr. Friely opined that Claimant can rarely lift and carry less than ten pounds; can occasionally look down and turn her head right or left; and can frequently look up and hold her head in a static position.  R. 600.  Mr. Friely opined that Claimant can rarely twist, occasionally stoop and never crouch, squat, climb ladder or stairs.  R. 600.  Mr. Friely opined that Claimant has significant limitations reaching, handling or fingering, such that Claimant can reach, grasp, turn or twist objects ten percent of the time and perform fine finger manipulations seventy percent of the time during an eight-hour workday.  R. 600.

## II.   <u>ADMINISTRATIVE PROCEEDINGS</u>

On October 16, 2006, Claimant filed her Application.  R. 136.  The Application was denied initially and on reconsideration.  R. 80, 82.  Upon Claimant's request, a hearing before an administrative law judge (hereafter "ALJ") was held on August 7, 2009, wherein Claimant and a vocational expert testified.  R. 42-77, 93.  Claimant testified that she worked through August 2006, and has not worked since.  R. 46.  Claimant stated that most days she can drive unless prevented by the pain in her back and body.  R. 47.  Claimant testified that she can turn her neck and her neck surgery gave her some mobility, although she finds it hard to look over her shoulder.  R. 47.

Claimant stated that her prior work as an LPN required lifting more than fifty pounds, bending, squatting, stooping, standing, sitting, and was both physically and emotionally demanding.  R. 48-49.  Claimant testified that she can no longer work as an LPN because of her neck, back, blood clots in her lungs and rheumatoid arthritis.  R. 50, 54, 56.  Claimant stated that the surgery performed by Dr. Gillespy fused C5-C7 but was not successful in alleviating her

nerve damage and pain.  R. 51.  Claimant indicated that she is in constant pain, her left arm sometimes start trembling and she sometimes cannot hold things with her left arm.  R. 51-52. Claimant indicated that she has disc bulges in her back, a tear in L4-6 and experiences pain in her legs, which is worse in her left leg.  R. 52-53.  Claimant stated that her back pain has gotten worse since 2006, and she has not had a pain free day in her cervical region or lower back since then.  R. 52-53. Claimant testified that her blood clots make it hard to breathe and raises her blood pressure.  R. 54.  Claimant stated that her rheumatoid arthritis is in the joints of her back, left shoulder, ankles and feet, and causes pain, joint disfiguration and makes it hard to walk.  R. 56.

Claimant indicated that she is taking Darvocet for pain, Lexapro for depression, Flexeril, Coumadin and others daily.  R. 58-59.  Claimant stated that her medications cause increased memory loss, easy bruising, excess bleeding and tiredness.  R. 59.  Claimant indicated that she can walk to and from the mailbox at the end of her driveway and can stand thirty minutes without needing to take a break.  R. 60-61.  Claimant testified that she experiences a lot of pain when bending, kneeling or squatting.  R. 61.  Claimant indicated that she can sit thirty minutes before needing to stand due to pain, cramping and spasms in her low back.  R. 62.  Claimant stated that she can lift a gallon of milk with both hands, sometimes reads and checks her e-mail, but does not exercise or engage in hobbies.  R. 63-64.  Claimant testified that she can make it through her church service because her participation in the choir requires alternating between sitting and standing, although the singing makes her short of breath.  R. 64.  Claimant stated that her husband washes her back and feet, and helps her dress.  R. 65.  Claimant indicated that her son usually performs household chores.  R. 65.  Claimant testified that she gets up during the night and has not had sustained sleep since 2006.  R. 66.  Claimant stated that she normally gets

up at eleven, bathes if her husband is home, sometimes watches television lying down, grocery shops and frequently naps for fifteen to twenty minutes.  R. 66-67.

In 2003, Claimant worked as an intake specialist at Florida Blood Centers for three months.  R. 69, 72.  Claimant stated she screened donors, checked blood pressure and drew blood.  R. 69-70.  Claimant also assisted donors if they got dizzy or needed to lie down after donating blood.  R. 70.

The vocational expert classified Claimant's past work as licensed practical nurse and phlebotomist.  R. 73.  The ALJ asked the vocational expert whether a person with the same age, work background and education as Claimant could perform Claimant's past work as actually or generally performed, with the following limitations:  can sit one hour at a time, up to six hours per day; can stand or walk thirty minutes at a time, up to four hours a day; can lift up to twenty pounds occasionally and ten pounds frequently; can occasionally bend, stoop, climb stairs, kneel and reach above shoulder level; cannot crawl, climb ladders, ropes or scaffolds; cannot work around unprotected heights, drive motorized vehicles, work around moving and hazardous machinery, or use vibrating tools; cannot use foot controls or engage in repetitive or forceful pushing and pulling.  R. 74.  The vocational expert testified that the restriction to standing thirty minutes at a time, up to four hours per day, precluded such a person from performing Claimant's past work.  R. 74-75.  The vocational expert testified that such a person would need to be able to stand at least six hours per day, including the thirty minute limitation, to work as a phlebotomist.  R. 75-76.

On August 31, 2009, the ALJ issued his decision.  R. 22-41.  The ALJ found that Claimant has the severe impairments of "degenerative lumbar and cervical disc disease status post cervical fusion, dysfunction of the left upper extremity, status post pulmonary embolism,

and obesity."  R. 27.  The ALJ found that Claimant's adjustment disorder was a non-severe impairment.  R. 27.  In making this finding, the ALJ determined that Claimant has only mild limitations in activities of daily living, social functioning and concentration, persistence or pace. R. 27-28.  The ALJ also found that Claimant has had no episodes of decompensation of extended duration.  R. 28.

The ALJ determined that Claimant has the residual functional capacity (hereafter "RFC") to perform the full range of light work with the following restrictions:  can stand/walk up to six hours per day, but only thirty minutes at a time; can occasionally, kneel, crouch, bend, stoop, reach above shoulder level and climb stairs; cannot crawl, climb ladders, ropes or scaffolds; cannot work around unprotected heights, operate motorized vehicles or work around moving or hazardous machinery; and cannot use vibrating tools, foot controls or perform repetitive or forceful pushing or pulling.  R. 30.  In reaching his RFC finding, the ALJ summarized the medical treatment Claimant has received, the medical records of Drs. Ortolani and Gillespy, the consultative examinations of Drs. Carpenter and Verones, Mr. Friely's physical RFC questionnaire and Claimant's testimony.  R. 32-37.[4]

After summarizing the record evidence, the ALJ found that Claimant was not credible to the extent her testimony was inconsistent with his RFC finding.  R. 37.  The ALJ explained that although Claimant received some "perfunctory treatment" for her alleged mental symptoms, "both her treatment records, and the consultative examination, were indicative of no more than mild impairment of functioning."  R. 38.  The ALJ also noted that Claimant did not "specify any significant persistent limiting effects" stemming from her alleged mental symptoms.  R. 38.  The ALJ noted that Dr. Gillespy's records indicated that Claimant's range of motion, pain and left

---

[4] The ALJ erroneously identified Dr. James Shoemaker, instead of Dr. Carpenter, as conducting the February 2008, physical consultative examination.  *See* R. 33.

arm symptoms improved after the surgery.  R. 38.  The ALJ stated that Dr. Carpenter's report, Dr. Ortolani's treatment notes and the objective radiological evidence indicated that Claimant's limitations stemming from her cervical and lumbar complaints were relatively mild.  R. 38.  The ALJ further stated that Claimant's respiratory complaints due to pulmonary embolism was being effectively treated with blood thinners and there were no medication side effects that supported Claimant's claim that she has serious respiratory issues.  R. 38-39.  The ALJ also noted that Claimant's testimony regarding the significant limitations she has performing daily activities was contradictory to the information she provided to Dr. Verones.  R. 39.

In regard to the opinion evidence, the ALJ gave great weight to the treatment notes of Drs. Ortolani and Gillespy, and Dr.  Carpenter's consultative opinion.  R. 39.  The ALJ rejected Mr. Friely's opinion because the limitations contained in his RFC questionnaire were not supported with treatment notes, by the broader medical evidence or clinical findings.  R. 40.  The ALJ also rejected Mr. Friely's opinion because he "did not indicate any credential that would suggest that his opinion of functioning was submitted by an acceptable medical source."  R. 40.  Based on the foregoing findings, the ALJ found Claimant could perform her past relevant work as a phlebotomist and is not disabled.  R. 40-41.

On October 27, 2009, Claimant requested the Appeals Council review the ALJ's decision.  R. 15.  Subsequently, Claimant submitted a treatment note dated November 26, 2010, from Shriram Marathe, M.D., as additional evidence for the Appeals Council to review.  R. 1, 4-5.  On July 25, 2011, the Appeals Council denied Claimant's request for review.  R. 1-5.  In denying Claimant's request, the Appeals Council stated that it considered the additional evidence but found it "does not provide a basis for changing the [ALJ's] decision."  R. 1-2.

III.    **LEGAL STANDARDS**

A.    **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

B.    **THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## IV.   <u>ANALYSIS</u>

Claimant raises four issues on appeal. First, Claimant contends the ALJ did not properly evaluate her credibility. Doc. No. 25 at 17-21. Second, Claimant argues that the ALJ erred in not giving Mr. Friely's RFC opinion controlling weight or, alternatively, failed to properly develop the record. Doc. No. 25 at 21-22. Third, Claimant asserts that the Appeals Council failed to properly evaluate the new evidence she submitted. Doc. No. 25 at 22-24. Fourth, Claimant contends that the ALJ failed to include all of her impairments in his RFC finding. Doc. No. 25 at 24-25.

### A.  The ALJ Properly Evaluated Claimant's Credibility

Claimant argues that the ALJ gave insufficient reasons for determining that her testimony was not credible.  Doc. No. 25 at 17.  Claimant contends the medical record supports her testimony because she has "experienced a serious surgery, is [sic] positive findings of damage to her lower back as well as nerve damage and continues to report pain for which she takes multiple medications."  Doc. No. 25 at 20.  Claimant also points out that the medical records indicate she suffers from "anxiety and depression which would presumably be related to the severe pain which [she] continues to experience.  Additionally, she suffers from pulimary [sic] embolism as well as some obesity."  Doc. No. 25 at 20.  Claimant asserts that because the medical record supports her testimony, the ALJ "failed to provide a reasonable basis for rejecting these severe restrictions noted by the Plaintiff in the record."  Doc. No. 25 at 20.

"Credibility determinations are for the Commissioner, not the courts."  *Taylor v. Comm'r of Soc. Sec. Admin.*, 213 F. Appx. 778, 779 (11th Cir. 2006).[5]  The ALJ has "wide latitude as finder of fact to evaluate the weight of the evidence, particularly the credibility of the testimony."  *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984).  The ALJ provided multiple reasons for finding Claimant not credible:  the medical record indicated Claimant's mental symptoms imposed no greater than a mild impairment of functioning; Claimant's limitations with regard to her cervical and lumbar impairments were relatively mild; Claimant's surgery resulted in improvements in her cervical range of motion, pain and left arm symptoms; Claimant's respiratory complaints due to pulmonary emboli are being effectively treated with blood thinners; and the information Claimant provided to Dr. Verones indicated a "much higher level of functioning," in contrast to her testimony at the hearing.  R. 38-39.

---

[5] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

Claimant does not contend that the reasons given by the ALJ are unsupported by the medical record.  Rather, Claimant asserts that the ALJ should have found her to be credible because there is evidence in the medical record that supports her testimony.  The ALJ's credibility finding is supported by the record evidence he cited.  The fact that there may be evidence that supports Claimant's credibility simply underscores the importance of the Court adhering to the Eleventh Circuit's statement that "[c]redibility determinations are for the Commissioner, not the courts." *Taylor*, 213 F. Appx. at 779.

### B.  The ALJ Properly Considered Mr. Friely's RFC Opinion

In making an RFC determination, the ALJ must consider all of the relevant evidence.  *See Siverio v. Comm'r of Soc. Sec.*, 461 F. Appx. 869, 871 (11th Cir. 2012).  This includes evidence from a nurse, physician assistant, educational personnel, social welfare agency personnel and non-medical sources.  *See* 20 C.F.R. § 404.1513.  However, only physicians, psychologists, optometrists, podiatrists and qualified speech-language pathologists can provide evidence to establish an impairment or a claimant's functional capacity despite the impairment.  *See id.*; *Siverio*, 461 F. Appx. at 871.

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 F. Appx. 266, 269 (11th Cir. 2005).  Thus, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the

evidence, evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records.

Claimant concedes the report at issue does not indicate it was prepared by a doctor and is unsupported by any treatment records.  Doc. No. 25 at 22.  Nevertheless, Claimant suggests that Mr. Friely is a doctor because his RFC opinion "reference[s] it comes from a medical office" and she "had been seen by medical specialists monthly over a period of seven months" as indicated in Mr. Friely's RFC questionnaire.  Doc. No. 25 at 22.  Claimant asserts that the ALJ should have given Mr. Friely's RFC opinion controlling weight because Mr. Friely indicated the frequency and length of his contact, provided medical diagnoses, set forth Claimant's medical symptoms and indicated that Plaintiff was taking medications.  Doc. No. 25 at 22.  Alternatively, Claimant contends that given the "serious nature of the diagnosis and the serious nature of the restrictions, the ALJ and/or the Appeals Council should have remanded this matter for further explorations [sic] and/or to fully develop the record before we developed the record."  Doc. No. 25 at 22.

Mr. Friely does not identify himself as a doctor on the RFC questionnaire.  R. 597-601. The fact that Mr. Friely indicated he authored it while at Medical Specialists of Palm Coast does not prove he is a doctor or any other type of medical professional.  Claimant did not present any evidence to the ALJ or the Appeals Council showing that Mr. Friely is a doctor, and on appeal Claimant merely relies on inference and suggestion to support her statement that Mr. Friely is a doctor.  The ALJ was not required to give substantial weight to Mr. Friely's RFC opinion and the case was not required to be remanded to determine whether Mr. Friely is, in fact, a doctor because it is Claimant's burden to provide evidence that she is disabled.  *See Ellison v. Barnhart*,

355 F.3d 1272, 1276 (11th Cir. 2003).  Claimant has not met her burden and the ALJ properly considered, evaluated and weighed Mr. Friely's RFC opinion.

Assuming arguendo that Mr. Friely is a doctor, the ALJ rejected his RFC opinion because it is unsupported by any treatment notes or the medical evidence as a whole.  *See* R. 39.  Thus, the ALJ found that Mr. Friely's RFC opinion is conclusory and not bolstered by the evidence. These reasons are supported by substantial evidence and constitute good cause for rejecting Mr. Friely's RFC opinion.  *See Johnson*, 138 F. Appx. at 269.

### C.  The Appeals Council Properly Evaluated Claimant's New Evidence

Generally, a claimant may present new evidence at each stage of the administrative process.  *Flowers v. Comm'r of Soc. Sec.*, 441 F. Appx. 735, 745 (11th Cir. 2011).  The Appeals Council must consider new, noncumulative and material evidence presented by a claimant. *Smith v. Soc. Sec. Admin.*, 272 F. Appx. 789, 800 (11th Cir. 2008).[6]  However, new evidence is only required to be considered when it "relates to the period on or before the date of the ALJ's hearing decision.  *Id.*

Claimant contends that the Appeals Council did not properly reference or consider Dr. Marathe's treatment note, which she submitted after the ALJ's decision and which constitutes new and material evidence.  Doc. No. 25 at 23.  Claimant asserts that Dr. Marathe documented cardiac problems, left arm pain and numbness, and opined that Claimant is totally and permanently disabled.  Doc. No. 25 at 23.  Claimant also states:

> [T]hese records supplement and/or our [sic] material additional records that supplement the prior record submitted to the ALJ referencing indicating [sic] the Plaintiff's continued complaints of pain and other restrictions, including some hard issues that the Plaintiff suffered from.  A [sic] significantly indicate Plaintiff's

---

[6] Evidence is "material" when its relevance and probative value leads to a reasonable probability that it would change the ALJ's decision.  *Smith v. Soc. Sec. Admin.*, 272 F. Appx. 789, 800 (11th Cir. 2008) (quoting *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987)).

> complaint of pain subsequent to the surgical fusion that Plaintiff
> contends are not fully developed in the record.  In reference to that
> issue, while the Plaintiff's surgical physician Dr. Gillespie
> indicated the Plaintiff was doing better after the surgery, the record
> is not fully developed as to the Plaintiff's full medical condition,
> especially in reference to the cervical spine, subsequent to the
> surgery.  The records from Dr. Marathe more fully reference to
> those injuries.

Doc. No. 25 at 23.  Thus, Claimant contends that Dr. Marathe's treatment note supplements the medical record with regard to her pain after the surgery performed by Dr. Gillespy.

Dr. Marathe's treatment note is dated November 26, 2010, over a year after the ALJ issued his decision.  R. 605.  Dr. Marathe's treatment note indicates he treated Claimant for left knee pain, swelling and numbness after she fell in January 2010.  R. 605.  In November 2010, Dr. Marathe treated Claimant for complaints of chest pain, abdominal pain, rectal bleeding and diverticulitis.  R. 605.  His physical examination revealed normal neck, musculoskeletal system and neurological findings.  R. 606-07.  Dr. Marathe concluded that Claimant is totally and permanently disabled due to his assessment that Claimant has noncardiac chest pain, benign essential hypertension, GERD, diverticulosis, menopause, hyperlipidemia, low back pain from an injury in 2005, chronic pain, anemia and rheumatoid arthritis.  R. 607-08.

Dr. Marathe's treatment note does not supplement, provide additional information or clarification about Claimant's complaints following her surgery by Dr. Gillespy.  In fact, Dr. Marathe treated Claimant for complaints that are unrelated to her allegations that she cannot work due to her neck, back, blood clots in her lungs and rheumatoid arthritis.  *See* R. 50, 54, 56. Because Dr. Marathe treated Claimant for medical complaints that are unrelated to her allegations of disability and contain no treatment for or significant findings related to the purposes for which they are offered, his treatment note is not material.  *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (determining evidence was relevant and probative because it

pertained to a condition the claimant listed on his application as disabling); *Archer v. Comm'r of Soc. Sec.*, 176 F. Appx. 80, 82-83 (11th Cir. 2006) (finding new evidence not material where it related to new complaints of neck pain which were unrelated to claimant's previous treatment for back and hip pain).

Dr. Marathe's treatment note was rendered after the ALJ's decision and Dr. Marathe neither discusses, nor provides an opinion regarding Claimant's condition for the time period during which she seeks disability.  As such, Dr. Marathe's treatment note does not relate to the period on or before the ALJ's decision.  *See Caulder*, 791 F.2d at 877-78 (noting that new evidence contained a medical opinion regarding the presence of claimant's impairment during the time period for which benefits were sought); *Champion v. Astrue*, No. 7:08–CV–160 (HL), 2010 WL 745783 (M.D. Ga. Mar. 1, 2010) (new evidence did not relate to time period before ALJ's decision where it was rendered after ALJ's decision and was not accompanied by a medical opinion that interpreted its significance and relevance to the claimant's condition as it existed prior to the ALJ's decision).  Accordingly, the Appeals Council properly determined that the new evidence submitted by Claimant would not have changed the ALJ's decision because it was neither material, nor related to the time period prior to the ALJ's decision.

### D.  The ALJ's RFC Determination was Proper

Claimant argues that the ALJ failed to include her "mental-health restrictions resulting from the Plaintiffs [sic] diagnosed depression/adjustment disorder/depression, any indications of problems with the Plaintiff's memory resulting from those mental health issues and/or paying issues, as well as any difficulties the Plaintiff had breathing as a result of the pulmonary embolism" in the hypothetical posed to the vocational expert.  Doc. No. 25 at 25.  The ALJ was not required to include limitations from Claimant's depression and adjustment disorder because

the ALJ did not find them to be severe impairments.  When the ALJ finds a claimant's mental impairment to be non-severe, the ALJ does not err in omitting any resulting limitations from the hypothetical posed to the vocational expert.  *See Baxter v. Barnhart*, 165 F. Appx. 802, 804 n.2 (11th Cir. 2006) ("Because the ALJ properly determined that Baxter's antisocial personality disorder was not severe, the ALJ properly omitted limitations resulting from this disorder in the hypothetical to the VE.").

The ALJ also was not required to include any limitations with respect to Claimant's reported problems with memory and breathing because the ALJ found Claimant's complaints were not supported by the record.  *See* R. 27, 38-39.  An ALJ is not required to include findings that he rejects or impairments that are not supported by substantial evidence in the hypothetical posed to a vocational expert.  *See Wright v. Comm'r of Soc. Sec*, 327 F. Appx. 135, 137 (11th Cir. 2009).  Accordingly, the ALJ did not err in failing to include the non-exertional impairments and limitations Claimant identifies in the hypothetical posed to the vocational expert.

V.    **CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1.    The final decision of the Commissioner is **AFFIRMED**; and

2.    The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE and ORDERED** in Orlando, Florida on February 28, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

David W. Glasser
116 Orange Ave

Daytona Beach, FL 32114

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Doug Wilson, Branch Chief
Jennifer McMahon, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable William H. Greer
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224